Exhibit 7

# Washington Casualty Company

### This is a Claims-Made Policy
## DECLARATIONS

| | | | |
|---|---|---|---|
| Item I | Named Insured | Policy No: | 1-3979 |

Sea-Mar Community Health Centers
1040 S. Henderson Street
Seattle, WA   98108

Retroactive Date

12/01/1986

Item II   Policy Period (12:01 a.m. at place of issue)
From     12/31/2011     To   12/31/2012

Item III   Annual Premium  $          $ 380,815.00

Item IV   Coverage and Limits of Liability

| | | Each Claim | Annual Aggregate |
|---|---|---|---|
| Coverage A | Medical Professional Liability--Primary | $1,000,000 | $5,000,000 |
| Coverage B | Comprehensive General Liability--Primary | $1,000,000 | $5,000,000 |
| Coverage C | Employee Benefit Liability--Primary | $1,000,000 | $5,000,000 |
| Excess Coverage | Single Shared Limit As Shown on Form END019 (rev. 10/2005) | | |

*Note: Certain additional coverages within these standard forms have sub-limits and /or deductibles. See coverage forms.*

Item V   The following forms and endorsements are attached to and form a part of this Policy:
DEC005(rev. 1/2000), SCHL001(rev. 1/2000), CA001(rev. 1/2005), CA004(rev. 1/2001), DEF001(rev. 1/2001), PC001(rev. 1/2009), END005(rev. 2/1996), END006(rev. 1/2001), END010(rev. 2/1996), END019(rev. 10/2005), END050(rev. 2/2003)

This policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Kibble & Prentice
206-577-6802

12/29/2011
Issue Date

Form DEC005 Ed(01/2000)

USA_000159

# Washington Casualty Company

# Health Care Facility Coverage Agreement

**THIS AGREEMENT IS WRITTEN ON A "CLAIMS MADE" BASIS AND PROVIDES COVERAGE FOR THOSE EVENTS OCCURRING ON OR AFTER THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND FIRST REPORTED WHILE THE AGREEMENT IS IN FORCE.  ALL WORDS IN CAPITAL LETTERS HAVE SPECIAL MEANING AND ARE DEFINED IN THIS AGREEMENT.**

In consideration of the payment of premium, in reliance upon the statements in the Applications and subject to the DECLARATIONS, and subject to all the terms and conditions of this AGREEMENT, the COMPANY agrees with the NAMED INSURED as follows:

## SECTION I- COVERAGES

**COVERAGE A.   Medical Professional Liability**

### INSURING AGREEMENT

The COMPANY will pay on behalf of an INSURED all DAMAGES the INSURED shall become legally obligated to pay because of a CLAIM arising from an EVENT resulting in MEDICAL PROFESSIONAL INJURY.  The CLAIM must be FIRST REPORTED, during the AGREEMENT PERIOD.

However, this coverage AGREEMENT will not cover, nor will the COMPANY be liable for, CLAIMS based upon, arising from, or in consequence of any EVENT, if written notice of, or constructive notice of, such EVENT has previously been given to another insurer that covers CLAIMS under any coverage section of which this AGREEMENT is a replacement, or if the INSURED has constructive notice of such an EVENT and fails to disclose the EVENT to the COMPANY.

**COVERAGE B.   Commercial General Liability**

### INSURING AGREEMENT

The COMPANY will pay on behalf of an INSURED all DAMAGES the INSURED shall become legally obligated to pay because of a CLAIM arising from an EVENT resulting in BODILY INJURY, PROPERTY DAMAGE, or PERSONAL INJURY that takes place in the COVERAGE TERRITORY.    The CLAIM must be FIRST REPORTED during the AGREEMENT PERIOD.

However, this coverage AGREEMENT will not cover, nor will the COMPANY be liable for, CLAIMS based upon, arising from, or in consequence of any EVENT, if written notice of, or constructive notice of, such EVENT has previously been given to another insurer that covers CLAIMS under any coverage section of which this AGREEMENT is a replacement, or if the INSURED has constructive notice of such an EVENT and fails to disclose the EVENT to the COMPANY.

USA_000160

# Washington Casualty Company

### SECTION II- COMMON DEFINITIONS:

**Definitions: The following terms apply to all parts of this coverage AGREEMENT and are defined and will appear in capital letters throughout the AGREEMENT.**

AGREEMENT means an insurance policy, subject to all the terms and conditions therein, issued to the NAMED INSURED by the COMPANY.

AGREEMENT PERIOD means the "Policy Period" of time stated in Item II of the DECLARATIONS.

BODILY INJURY means physical harm, sickness, disease, death, mental injury, and mental anguish. BODILY INJURY does not mean MEDICAL PROFESSIONAL INJURY.

CLAIM means;

1) an assertion by any person for DAMAGES from an INSURED due to an EVENT, including the commencement of a SUIT, or

2) an EVENT reported in writing to the COMPANY that might reasonably be expected to result in an assertion for DAMAGES from an INSURED, except reports of EVENTS made by an INSURED to the COMPANY on an incident reporting or quality assurance memo form shall not constitute proper notice of an EVENT unless specifically identified as such.

COMPANY means Washington Casualty Company.

COVERAGE TERRITORY means, the United States of America, its territories, possessions, and Canada; all parts of the world if the INJURY arises out of the activities of an INSURED whose home is in the United States of America, its territories or possessions or Canada but is away for a short time on the NAMED INSURED's business.

DAMAGES means all forms of compensatory damages, but does not include governmental, civil or criminal fines or penalties, defense costs, or equitable relief such as injunctions or restitution.

DECLARATIONS means the first page of this AGREEMENT that provides information including, but not limited to: policy number, the NAMED INSURED and address, AGREEMENT PERIOD, RETROACTIVE DATE, annual premium, coverage, limits and applicable forms and agreements.

DIRECT PATIENT CARE includes, but is not limited to, any direct treatment, consultation, diagnostic test or procedure, therapeutic procedure, pathological analysis or report, or any other similar medical or health service.

EMPLOYEE includes a LEASED WORKER. EMPLOYEE does not include a TEMPORARY WORKER.

EVENT means an incident, including a series of related acts or omissions, that results in INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of an INSURED, and which occurs on or after the RETROACTIVE DATE stated in the DECLARATIONS. All DAMAGES arising out of such exposure to substantially the same conditions shall be considered as arising out of one EVENT. DAMAGES arising out of one prepared or acquired lot of goods or products shall be considered as arising out of one EVENT.

USA_000161

# Washington Casualty Company

EXTENDED REPORTING PERIOD means the time after the AGREEMENT PERIOD term for reporting CLAIMS due to an EVENT occurring on or after the RETROACTIVE DATE stated in the DECLARATIONS and before the end of the AGREEMENT term. The EXTENDED REPORTING PERIOD does not extend the AGREEMENT PERIOD or change the scope of coverage provided.

FIRST REPORTED means the first written notice to the COMPANY, indicating the facts of an EVENT, or enclosing of a SUIT seeking DAMAGES from an INSURED due to an EVENT. Reports of EVENTS made by an INSURED to the COMPANY on an incident reporting or quality assurance memo form shall not constitute proper notice of an EVENT unless specifically identified as such.

HAZARDOUS PROPERTIES includes radioactive, toxic, or explosive properties.

HOSTILE FIRE means fire which becomes uncontrollable or breaks out from where it was intended to be.

INJURY means, collectively, BODILY INJURY, PERSONAL INJURY, MEDICAL PROFESSIONAL INJURY, and PROPERTY DAMAGE.

INSURED CONTRACT means;

1) Contract for a lease of a premise. However that portion of the contract for a lease of premises that indemnifies any person or organization for DAMAGE by fire to premises while rented to you or temporarily occupied by an INSURED with permission of the owner is not an INSURED CONTRACT;

2) A sidetrack agreement;

3) Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4) An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5) An elevator maintenance agreement;

6) That part of any other contract of agreement pertaining to a NAMED INSURED business (including an indemnification of a municipality in connection with work performed for a municipality) under which that INSURED assumes the tort liability of another party to pay for INJURY to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. This definition does not include that part of any contract or agreement;

   a) That indemnifies a railroad for INJURY arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, rail-bed, tunnel, underpass or crossing;

   b) That indemnifies an architect, engineer or surveyor for INJURY arising out of;

      i) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications.

      ii) Giving direction, supervising, or giving supervisory instructions, or failing to give them, if that is the primary cause of the INJURY.

USA_000162

# Washington Casualty Company

LEASED WORKER means a person leased to you be a labor-leasing firm under an agreement between you and the labor-leasing firm, to perform duties related to the conduct of your business. LEASED WORKER does not include TEMPORARY WORKER.

LOCUM TENENS means a medical care provider temporarily taking the place of an INSURED.

MEDICAL PROFESSIONAL INJURY shall mean injury to any person arising out of:

1) The rendering of or failure to render medical, psychological, surgical, dental, nursing, or other health care services to such person;

2) The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances, if the injury occurs after the INSURED has relinquished physical possession thereof to others;

3) The handling of or performing autopsies or other post-mortem examinations on deceased human bodies;

4) The activities of any person within the scope of his or her duties:

   a) as a member of a committee of the NAMED INSURED,

   b) as a member of a committee of the medical or professional staff of the NAMED INSURED,

   c) as a person communicating information to the NAMED INSURED or its medical or professional staff for the purpose of aiding in the evaluation of the qualifications, fitness, or character of an applicant for membership or privileges on such medical or professional staff, or for purposes of initiating corrective action, or

   d) as a person charged with the duty of acting as a hearing officer or agent of a judicial review committee executing directives of a committee of the NAMED INSURED.

MOLD, MILDEW AND OTHER FUNGI, including mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description.

MOLD, MILDEW OR OTHER FUNGI CLAIM:

   a) CLAIMS for BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY or advertising injury based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving exposure to, or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of, mold, mildew, spores, mycotoxins, fungi, organic pathogens, or other micro organisms of any type, nature or description whatsoever;

   b) any DAMAGES, cost, expense or charge to test, monitor, clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize, rehabilitate, or in any other way respond to or assess the effect(s) of mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever; or

   c) any DAMAGES, cost, expense, charge, fine or penalty incurred, sustained or imposed by order, direction, request or agreement of any court, government agency, regulatory body or civil, public or military authority in connection with or in any way relating to mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever;

USA_000163

# Washington Casualty Company

provided, however, that this exclusion shall not apply to any CLAIM based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the INSURED's use of mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro organisms of any type, nature or description whatsoever in connection with the rendering of Medical Services, including medical research activities.

NUCLEAR FACILITY means:

a) any NUCLEAR REACTOR;

b) any equipment or device designed or used for separating the isotopes of uranium or plutonium, processing or utilizing SPENT FUEL, or handling, processing or packaging WASTE;

c) any equipment or device used for the processing, fabricating, or alloying of NUCLEAR MATERIAL if at any time the total amount of such material in the custody of the INSURED at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

d) any structure, basin, excavation, premises, or place prepared or used for storage or disposal of WASTE, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

NUCLEAR MATERIAL means source material, special nuclear material or by-product material, as these terms are used in the Atomic Energy Act of 1954 or in any law amendatory thereof.

NUCLEAR REACTOR means any apparatus designed or used to sustain nuclear fission or fusion in a self-supporting chain reaction, or designed or used to contain a critical mass of fissionable material.

PERSONAL INJURY means injury, other than MEDICAL PROFESSIONAL INJURY, arising out of one or more of the following offenses:

1) False arrest, detention or imprisonment;

2) Malicious prosecution;

3) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, land lord or lessor;

4) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5) Oral or written publication of material that violates a person's right of privacy;

6) The use of another's advertising idea in the NAMED INSURED's advertisement; or

7) Infringing upon another's copyright, trade dress or slogan in the NAMED INSURED's advertisement.

POLLUTANTS mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

USA_000164

# Washington Casualty Company

POLLUTION CLAIMS means:

1) Any loss, cost or expense arising out of any governmental direction or request that an INSURED test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize POLLUTANTS.

2) Any loss arising out of the actual, alleged or threatened discharge, dispersal, storage, release, or escape of POLLUTANTS:

   a) at or from any premises, site or location which is or was at any time owned or occupied by, rented or loaned to, an INSURED;

   b) at or from any premises, site or location which is or was at any time used by or for an INSURED or others for the handling, storage, disposal, processing or treatment of WASTE;

   c) which are at any time transported, handled, stored, treated, disposed of, or processed as WASTE by or for an INSURED or any person or organization for whom an INSURED may be legally responsible; or

   d) at or from any premises, site or location on which any INSURED or any contractors or subcontractors working directly or indirectly on any INSURED'S behalf are performing operations;

      i. if the POLLUTANTS are brought on or to the premises, site or location in connection with such operations by such insured contractor or subcontractor; or

      ii. if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of POLLUTANTS or MOLD, MILDEW OR OTHER FUNGI.

PROPERTY DAMAGE means:

1) Physical injury to tangible property, including consequential loss therefrom. All such resulting loss shall be deemed to occur at the time of the physical injury that caused it; or

2) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the EVENT that caused it.

RETROACTIVE DATE means the date shown in the DECLARATIONS of this AGREEMENT. There is no coverage for any SUIT, CLAIM, DAMAGES, EVENTS or coverage afforded under Defense Agreement, prior to this date.

SPENT FUEL means any fuel element or fuel component, solid or liquid, that has been used or exposed to radiation in a "Nuclear Reactor".

SUIT means:

1) A civil lawsuit;

2) An arbitration proceeding, to which the INSURED must submit or does submit with our consent; or

3) Any alternative dispute resolution proceeding to which the INSURED submits with our consent.

USA_000165

# Washington Casualty Company

SUPERVISING, EVALUATING, INSTRUCTING, or PROCTORING means only that supervising, evaluating, instructing, or proctoring required by the NAMED INSURED, or required as an obligation of medical staff membership, or required by any applicable governmental authority.

TEMPORARY WORKER means a person who is furnished to you to substitute for a permanent EMPLOYEE on leave or to meet seasonal or short-term workload conditions.

VOLUNTEER means any person or group, including an auxiliary, whose services or labor are at the direction of the NAMED INSURED and uncompensated from any source, except for mileage reimbursement from the NAMED INSURED.

WASTE means waste material containing by-product material and resulting from the operation by any person or organization of any NUCLEAR FACILITY included within the definition of NUCLEAR FACILITY.

## SECTION III-DEFINITION OF INSURED:

1) The entity or entities described in Item I of the DECLARATIONS and herein referred to as the NAMED INSURED.

2) The unqualified word INSURED means:

a) The NAMED INSURED;

b) Any EMPLOYEE or VOLUNTEER of the NAMED INSURED while such employee or VOLUNTEER is acting within the scope of his/her duties as such;

c) Any medical personnel working as an independent contractor for the NAMED INSURED, under a contract in which the NAMED INSURED has agreed to provide general liability, or medical professional liability coverage, for such medical personnel, but only when such medical personnel are acting within the scope of their duties for the NAMED INSURED;

   i) only if the NAMED INSURED furnishes a listing of all such medical personnel to the COMPANY and;

   ii) it is received within 90 days of the annual anniversary of this AGREEMENT.

d) Any organization the NAMED INSURED newly acquires or forms and over which it maintains ownership, majority interest, or managerial control will qualify as a NAMED INSURED if there is no other similar insurance available to that organization, provided:

   i) The NAMED INSURED advises the COMPANY in writing within 30 days of acquisition of the newly acquired or formed organization or the end of the AGREEMENT PERIOD, whichever is earlier. Coverage does not apply to INJURY that occurred before the NAMED INSURED acquired or formed the organization.

e) Any partner, officer, director, chief executive officer, superintendent, administrator, trustee, or stockholder of the NAMED INSURED, but only with respect to his/her legal liability while acting within the scope of his/her duties to the NAMED INSURED. However, coverage under this provision shall not extend to DIRECT PATIENT CARE;

USA_000166

# Washington Casualty Company

f) Any member of a limited liability company if such limited liability company is so designated in ITEM I of the DECLARATIONS, but only with respect to the conduct of that company's business;

g) A student enrolled in a training program offered by the NAMED INSURED, but only for such person's legal liability arising from the performance of, or failure to perform, duties in the training program in which enrolled, and only when such person is not also acting as an agent or student of an entity other than the NAMED INSURED;

h) Any person acting within the scope of his or her duties as a member of a committee of the NAMED INSURED. The coverage afforded by this provision shall be excess over any other valid and collectible insurance;

i) Any LOCUM TENENS of the NAMED INSURED, while acting within the scope of his or her duties in the course of service for the NAMED INSURED;

j) Any member of the medical staff of the NAMED INSURED, while acting within the scope of his or her duties under the medical staff bylaws, rules, and regulations. This includes such authority and responsibility as may be delegated to such medical staff member by the NAMED INSURED, provided the coverage under this provision shall not extend to DIRECT PATIENT CARE except while SUPERVISING, EVALUATING, INSTRUCTING, or PROCTORING a resident, paramedic, trainee, member of the medical staff, an applicant for medical staff privileges, student, VOLUNTEER, or employee of the NAMED INSURED. However, the coverage under this provision shall be excess over any other valid and collectible insurance;

k) A person communicating information to the NAMED INSURED or its medical or professional staff for the purpose of aiding in the evaluation of the qualifications, fitness, or character of an applicant for membership or privileges on the NAMED INSURED's medical or professional staff or for purposes of initiating corrective or disciplinary action;

l) A person charged with the duty of acting as a hearing officer or agent of a judiciary review committee executing directives of a committee of the NAMED INSURED.

## SECTION IV- PREMISES MEDICAL PAYMENTS

1) The COMPANY will pay up to $5,000 for medical expenses of any one person but not more than $25,000 from any one EVENT caused by an accident:

a) On premises the NAMED INSURED owns or rents;

b) On ways next to premises the NAMED INSURED owns or rents; or

c) Because of the NAMED INSURED'S operations, provided that:

i) The accident takes place during the AGREEMENT PERIOD;

ii) The expenses are incurred and reported to the COMPANY within one year of the date of the accident; and

iii) The injured person submits, as soon as practicable, written proof of a CLAIM for medical expenses, under oath if required. If the COMPANY requests, the injured person shall execute authorization to enable the COMPANY to obtain medical reports and copies of records. The injured person will also submit to physical

USA_000167

# Washington Casualty Company

examinations, at the COMPANY's expense, by physicians of the COMPANY's choice, as often as is reasonably required.

2) The COMPANY will not pay under Section IV - PREMISES MEDICAL PAYMENTS:

a) To any INSURED, except for VOLUNTEERS working on behalf of the NAMED INSURED;

b) To any person hired to do work for, or on behalf of, the NAMED INSURED, or for, or on behalf of, a tenant of the NAMED INSURED;

c) To any tenant of the NAMED INSURED, if the accident occurs on that part of the premises rented to the tenant;

d) To any person, whether or not an employee of the NAMED INSURED, if benefits for such medical expenses are payable or must be provided under any unemployment, workers compensation, disability benefits, or other similar law;

e) To any person injured while taking part in any physical training, sports, athletic activity, or contest whether on a formal or informal basis;

f) Arising out of any medical, surgical, dental, X-Ray or other health service or treatment performed by any INSURED;

g) For reimbursement of expenses for any medical, surgical, dental, X-Ray or other health service performed by any INSURED.

3) No payment made under Section IV will imply an admission of liability. Each payment will reduce the amount payable for BODILY INJURY under Coverage B if liability is later established.

### SECTION V-POLLUTION or MOLD, MILDEW OR OTHER FUNGI

1) The COMPANY will pay on behalf of an INSURED all sums the INSURED shall become legally obligated to pay because of a POLLUTION CLAIM or MOLD, MILDEW OR OTHER FUNGI CLAIM arising from an EVENT, FIRST REPORTED during the AGREEMENT PERIOD, resulting in BODILY INJURY or PROPERTY DAMAGE to third parties.

2) Special Limits of Insurance:

a) The total limit of the COMPANY for all sums, including defense costs during any one AGREEMENT PERIOD because of BODILY INJURY or PROPERTY DAMAGE arising from all POLLUTION CLAIMS or MOLD, MILDEW OR OTHER FUNGI CLAIMS FIRST REPORTED during the AGREEMENT PERIOD shall not exceed $500,000 annually.

b) All POLLUTION CLAIMS or MOLD, MILDEW OR OTHER FUNGI CLAIMS arising out of or emanating from the same EVENT will be considered one CLAIM.

The special limits section does not apply to BODILY INJURY or PROPERTY DAMAGE caused by heat, smoke or fumes from a HOSTILE FIRE.

USA_000168

# Washington Casualty Company

### SECTION VI-LIMITS OF LIABILITY

1) The "Each Claim" Limit;

   a) The "Each Claim" limit of liability stated in the DECLARATIONS is the total limit the COMPANY will pay for DAMAGES resulting from an EVENT, regardless of the number of claimants, causes of action or INSUREDS.

   b) The "Each Claim" limit is further subject to the "Annual Aggregate" stated in the DECLARATIONS.

   c) Two or more causes of action arising from the same EVENT shall be considered a single CLAIM.

2) The "Annual Aggregate" Limit;

   a) The "Annual Aggregate" limit stated in the DECLARATIONS is the maximum amount the COMPANY will pay for DAMAGES for all EVENTS. The "Annual Aggregate" limit is subject to paragraph (a) above. In the event the AGREEMENT PERIOD is extended by endorsement for an additional period of less than three months, the additional period will be deemed part of the last preceding period for purposes of determining the "Annual Aggregate" limit of liability.

3) All INSUREDS share one limit for "Each Claim" and one limit for "Annual Aggregate".

4) If more than one coverage in this AGREEMENT or more than one policy issued by the COMPANY to the NAMED INSURED applies to the same EVENT, the most the COMPANY will pay under all policies will be the highest applicable limit under one policy.

5) Except with respect to SECTION VI - LIMITS OF LIABILITY and any rights or duties specifically assigned in the coverage parts or extensions, this insurance applies:

   a) As if each NAMED INSURED were the only NAMED INSURED; and

   b) Separately to each INSURED against whom a CLAIM is made or SUIT is brought.

### SECTION VII-EXTENDED REPORTING PERIOD

1) Upon termination of this AGREEMENT for any reason other than cancellation for non-payment of premium, the NAMED INSURED shall have the right upon payment of an additional premium and any other outstanding debt owed to the COMPANY, to request issuance of an endorsement or endorsements providing an EXTENDED REPORTING PERIOD. Such request must be by written notice to the COMPANY within 30 days after such termination.

2) The EXTENDED REPORTING PERIOD endorsement shall cover CLAIMS otherwise covered by the AGREEMENT that:

   a) arise from EVENTS before the termination date of this AGREEMENT and on or after the RETROACTIVE DATE shown in the DECLARATIONS; and

   b) are first made during the time period that the EXTENDED REPORTING PERIOD endorsement is in effect.

3) The EXTENDED REPORTING PERIOD endorsement shall be issued in accordance with the COMPANY'S rules and rates in effect on the effective date of the EXTENDED

USA_000169

# Washington Casualty Company

REPORTING PERIOD endorsement. The final reporting period endorsement shall extend the reporting period indefinitely.

4) The limits of liability for the EXTENDED REPORTING PERIOD shall be the same as the limits of liability in the DECLARATIONS; however, the "Annual Aggregate" limit of liability in the DECLARATIONS applies separately to the EXTENDED REPORTING PERIOD.

5) Payment of premium for the EXTENDED REPORTING PERIOD endorsement shall be made promptly when due, or the EXTENDED REPORTING PERIOD will terminate and not be reinstated.

## SECTION VIII - EXCLUSIONS

This Insurance does not apply:

1) To any liability for punitive or exemplary damages, treble damages, any sum awarded in excess of compensatory damages, or any multiple of compensatory damages.

2) To any dishonest, fraudulent, or criminal acts, but this exclusion does not apply to the NAMED INSURED for acts of another INSURED unless committed with the knowledge of or at the direction of the NAMED INSURED.

3) To any alleged or actual sexual or physical abuse, sexual intimacy, sexual molestation, or sexual exploitation. This exclusion does not apply to the NAMED INSURED for acts of another INSURED unless committed with the knowledge or at the direction of the NAMED INSURED, provided:

   a) The total limit of the COMPANY for all DAMAGES and defense cost because of INJURY arising from any one sexual or physical abuse CLAIM shall not exceed $250,000.

   b) The total limit of the COMPANY for all DAMAGES and defense cost during any one AGREEMENT PERIOD because of INJURY arising from any sexual or physical abuse CLAIM(s) shall not exceed $250,000

4) To any liability for wrongful termination, or employment discrimination or harassment with respect to race, age, gender, marital status, ancestry, physical or mental handicaps, sex, sexual preference, pregnancy, or religion.

5) To INJURY due to war, whether or not declared, civil war, insurrection, rebellion, revolution, terrorism, or to any act or condition incident to any one of the foregoing.

6) To any obligation for which an INSURED or any carrier as his or her insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law or any similar law.

7) To INJURY to any employee of the NAMED INSURED, arising out of his or her employment by that INSURED. (In the State of Washington, this exclusion does not apply to any Washington employee whose employment is not subject to the Industrial Insurance Act of Washington.) This exclusion applies:

   a) To CLAIMS brought by or on the behalf of the spouse, child, parent, brother or sister of that employee arising out his or her of employment by the INSURED;

   b) Whether the INSURED may be liable as an employer or in any other capacity;

USA_000170

# Washington Casualty Company

   c) To any obligation to share DAMAGES with or repay someone else who must pay DAMAGES because of the INJURY, unless the liability for the acts of another have been assumed by the NAMED INSURED under a written contract prior to the INJURY.

8) To liability arising out of the ownership, maintenance, use, or loading or unloading of, any aircraft, watercraft, any motor vehicle, trailer, or semi-trailer; except this exclusion does not apply to:

   a) The loading and unloading of a patient by an INSURED.

   b) Non-owned motor vehicles and trailers used in the course of the NAMED INSURED's business. However this provision is subject to the limit of liability shown in the DECLARATIONS, Coverage B, and can under no condition exceed $2,000,000. Non-owned motor vehicle means those motor vehicles that the NAMED INSURED does not own, hire, rent, or lease. Coverage under this provision shall be excess of any other valid and collectible insurance. However, an employee of the NAMED INSURED shall not be an INSURED under the coverage afforded by this provision.

   c) Liability arising out of mobile equipment, including any attached machinery or equipment, designed for use principally off public roads if the liability arises out of an EVENT on premises the NAMED INSURED owns, leases, or controls.

9) To PROPERTY DAMAGE to:

   a) Property owned or occupied by or rented to the NAMED INSURED.

   b) Property loaned to the NAMED INSURED.

   c) Premises alienated by the NAMED INSURED, and liability arising from such premises, or any part thereof.

   d) Property in the care, custody or control of the NAMED INSURED or as to which the NAMED INSURED is for any purpose exercising physical control except;

      i) To any CLAIM for DAMAGES because of mysterious disappearance, theft or DAMAGE of personal property of a patient. This extension is subject to a deductible of $200 per CLAIM, and a maximum loss of $25,000 per CLAIM by any one patient.

      ii) To PROPERTY DAMAGE to structures or portions thereof rented or occupied by the NAMED INSURED, including fixtures permanently attached thereto, if such PROPERTY DAMAGE arises from fire. This extension is subject to a maximum loss per CLAIM of $300,000 to any one structure.

10) To INJURY for which the INSURED is obligated to pay DAMAGES by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for DAMAGES:

   a) That the INSURED would have in the absence of the contract or agreement; or

   b) Assumed in a contract or agreement that is an INSURED CONTRACT, provided the INJURY occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an INSURED CONTRACT, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an INSURED are deemed to be DAMAGES because of INJURY, provided:

USA_000171

# Washington Casualty Company

      i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same INSURED CONTRACT; and

     ii) Such attorney fees and litigation expenses are for defense of that party in a SUIT in which DAMAGES to which this insurance applies are alleged.

11) To INJURY for economic loss from allegations of slander, defamation, interference with business pursuits, or termination of or modification of business agreements due to business disputes disagreements or conflict between INSUREDs, or between an INSURED and any other party.

12) To BODILY INJURY or PROPERTY DAMAGE for which an INSURED may be held liable by reason of causing or contributing to the intoxication of any person, the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol, or any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    a) However, this exclusion does not apply to liability as a result of the giving, selling or serving of alcoholic beverages at social or fund raising functions. This grant of coverage is given, provided that no INSURED is in the business of manufacturing, distributing, selling, or serving of alcoholic beverages, and provided there has been no intentional violation of any statute, regulation or ordinance committed at an INSURED'S direction.

13) To liability arising from allegations of violations of any law that prohibits the unlawful restraint of trade, business, or profession.

14) To liability directly or indirectly brought about by, arising out of, or attributable to any actual or alleged violation of any consumer protection act or Racketeer Influenced and Corrupt Organizations Act, and any amendments thereto, or any rules or regulations promulgated thereunder.

15) To liability based upon the Employee Retirement Income Act or 1974 (also known as the Pension Reform Act of 1974), as amended in part by Title X of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) and amendments to either, or similar provisions of any State, Federal or local statutory law or common law.

16) To PERSONAL INJURY:

    a) Caused by or at the direction of the INSURED with the knowledge that the act would violate the rights of another or inflict injury;

    b) Arising out of oral or written publication of material, if done by or at the direction of the INSURED with knowledge of its falsity;

    c) Arising out of a criminal act committed by or at the direction of any INSURED;

    d) For which the INSURED has assumed liability in a contract or agreement. This exclusion does not apply to liability for DAMAGES that the INSURED would have in the absence of the contract or agreement;

    e) Arising out of the failure of goods, products or services to conform with any statement, quality or performance;

    f) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of POLLUTANTS at any time;

USA_000172

# Washington Casualty Company

    g) To liability arising from any of the INSURED's advertising activities, arising out of;

        i) Failure to perform an INSURED's obligations under a written contract;

        ii) Infringement of a registered trademark, service mark, or trade name of the NAMED INSURED's goods or services sold, for sale or advertised. But this exclusion does not apply to:

            (1) titles or slogans; or

            (2) Incorrect descriptions of goods or services; or

            (3) A mistake in an advertised price.

17) To INJURY, including all forms of radioactive contamination:

    a) with respect to which an INSURED under this AGREEMENT is also an insured under a nuclear energy liability agreement issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such agreement but for its termination upon exhaustion of its limit of liability;

    b) resulting from the HAZARDOUS PROPERTIES of NUCLEAR MATERIAL and with respect to which;

        i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

        ii) the INSURED is, or had this AGREEMENT not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

    c) resulting from the HAZARDOUS PROPERTIES of NUCLEAR MATERIAL, if;

        i) The NUCLEAR MATERIAL is at any NUCLEAR FACILITY owned by, or operated by or on behalf of, an INSURED or has been discharged or dispersed therefrom,

        ii) The NUCLEAR MATERIAL is contained in SPENT FUEL or WASTE at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an INSURED, or

        iii) The INJURY arises out of the furnishing by an INSURED of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any NUCLEAR FACILITY.

USA_000173

# Washington Casualty Company

## Employee Benefit Liability Coverage Agreement

**THIS AGREEMENT IS WRITTEN ON A "CLAIMS MADE" BASIS AND PROVIDES COVERAGE FOR THOSE EVENTS OCCURRING ON OR AFTER THE RETROACTIVE DATE STATED IN THE DECLARATIONS AND FIRST REPORTED WHILE THE AGREEMENT IS IN FORCE. ALL WORDS IN CAPITAL LETTERS HAVE SPECIAL MEANING AND ARE DEFINED IN THIS AGREEMENT.**

In consideration of the payment of the premium, in reliance upon the statements in the Declarations and Applications and subject to all of the terms of this policy, the COMPANY agrees with the NAMED INSURED as follows:

### SECTION I – COVERAGES:

**COVERAGE C - Employee Benefit Liability Coverage**

#### INSURING AGREEMENT

The COMPANY will pay on behalf of the INSURED all sums the INSURED shall become legally obligated to pay as DAMAGES because of a negligent act, error, or omission of the INSURED, or of any person for whose acts the INSURED is legally liable, in the ADMINISTRATION of the INSURED'S EMPLOYEE BENEFIT PROGRAMS.

### SECTION II – COMMON DEFINITIONS:

ADMINISTRATION means the following acts authorized by the NAMED INSURED;

1) Giving counsel to employees with respect to EMPLOYEE BENEFIT PROGRAMS;

2) Interpreting EMPLOYEE BENEFIT PROGRAMS;

3) Handling of records and processing of CLAIMS in connection with EMPLOYEE BENEFIT PROGRAMS;

4) Effecting enrollment, termination, or cancellation of employees under EMPLOYEE BENEFIT PROGRAMS.

CLAIM means:

1) An assertion by any person for DAMAGES from an INSURED;

2) The commencement of a lawsuit seeking DAMAGES from an INSURED; or

3) The reporting in writing to the COMPANY of an incident that might reasonably be expected to result in an assertion for DAMAGES from an INSURED.

COMPANY means Washington Casualty Company

DAMAGES mean all forms of compensatory damages, but does not include governmental, civil or criminal fines or penalties or defense costs.

EMPLOYEE BENEFIT PROGRAMS means life insurance, accident and health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, social security and disability benefits insurance, or any other similar plan, provided in whole or part by the NAMED INSURED.

USA_000174

# Washington Casualty Company

SECURITIES, as used herein, shall have the same meaning as in 15 U.S.C. 77(b)(1), or any law amendatory thereof.

## SECTION III – DEFINITION OF NAMED INSURED AND INSURED:

The term NAMED INSURED means;

1) The entity or entities described as the NAMED INSURED in the Declarations.

2) The unqualified word INSURED includes each of the following to the extent set forth in this definition:

   a) The NAMED INSURED;

   b) Any officer, director, trustee, stockholder, or employee of the NAMED INSURED, when such person is authorized to act in the ADMINISTRATION of the NAMED INSURED'S EMPLOYEE BENEFIT PROGRAMS.

## SECTION IV - CLAIMS MADE COVERAGE PERIOD

Coverage is provided on a claims made basis. It covers CLAIMS first made against the INSURED and reported in writing to the COMPANY while this agreement is in effect.

All CLAIMS arising out of the same negligent act, error, or omission shall be considered as having been made at the time the first CLAIM was reported in writing to the COMPANY.

## SECTION V - NOTICE OF CLAIM, OR SUIT

Upon receiving information as to any alleged negligent act, error, omission, or an incident that could reasonably be expected to become a CLAIM, written notice shall be given to the COMPANY or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the INSURED, reasonably obtainable information respecting the time, place, and circumstances of the alleged negligent act, error, omission, or incident, and the names and addresses of injured persons and any witnesses.

If CLAIM is made or suit is brought against the INSURED, the INSURED shall immediately forward to the COMPANY every demand, notice, summons, or other process received by the INSURED or his or her representative.

## SECTION VI - EXTENDED DISCOVERY PERIOD

Upon the termination of this agreement for any reason other than cancellation for nonpayment of premium, the NAMED INSURED shall have the right by giving written notice to the COMPANY within thirty (30) days after such termination to request issuance of a 12 calendar month extended discovery period endorsement.

The extended discovery period endorsement shall cover CLAIMS otherwise covered by the agreement that:

1) Arise from negligent acts, errors, omissions or incidents before the termination date of this agreement and on or after the date the INSURED became covered by the COMPANY; and

2) Are first made during the 12 calendar months that the extended discovery period endorsement is in effect.

USA_000175

# Washington Casualty Company

The extended discovery period endorsement shall be issued in accordance with the COMPANY's rules and rates in effect on the effective date of the extended discovery period endorsement.

## SECTION VII - EXCLUSIONS

The AGREEMENT does not apply to the following:

1) Failure of performance of contract by any insurer under an EMPLOYEE BENEFIT PROGRAM.

2) An INSURED'S failure to comply with any law concerning workers' compensation, unemployment insurance, social security, or disability benefits.

3) Failure of SECURITIES to perform as represented by an INSURED.

4) Advice given by an INSURED to an employee to participate or not to participate in stock subscription plan.

5) Failure of performance of any SECURITIES issued by an INSURED.

USA_000176

# Washington Casualty Company

### DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS AGREEMENT
### HEALTH CARE FACILITIES

A.  With respect to CLAIMS or SUITS brought within the United States of America, its territories or possession, or Canada, the COMPANY shall defend any suit against an INSURED containing allegations covered by this AGREEMENT and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent, and the COMPANY may make such investigation it deems expedient; but the COMPANY shall not be obligated to pay any CLAIM or judgment or to defend any suit after the applicable limits of liability has been exhausted by payment of judgments or settlements.

B.  With respect to CLAIMS or SUITS brought outside of the United States of America, its territories or possessions, or Canada, the COMPANY shall have the right, but not the obligation, to investigate and settle such CLAIMS and to defend such SUITS.  If the COMPANY elects not to investigate, settle or defend, the INSURED will make or cause to be made any investigation or defense as may be necessary, and will effect to the best of its ability such settlement or settlements as shall be deemed prudent in the mutual belief of the COMPANY and the INSURED.  The COMPANY shall reimburse the INSURED for the reasonable costs of such investigation or defense and, within the applicable limits of liability of this AGREEMENT, for the amount of such agreed settlements, but the COMPANY shall not be obligated to pay any CLAIM or judgment or to defend any suit after the applicable limits of liability have been exhausted by payment of judgment, or settlements.

C.  Defense coverage of up to $25,000 will be provided to the NAMED INSURED during the AGREEMENT PERIOD for investigation and defense of actions brought against the NAMED INSURED

   1.  by a state or federal medical regulatory agency due to an alleged INJURY covered by this AGREEMENT, or

   2.  by a peer review organization contracting with the Health Care Financing Administration (HCFA) regarding Medicare or Medicaid patients.

   The maximum amount to be paid for any and all CLAIMS made during the AGREEMENT PERIOD will be $25,000, regardless of the number of CLAIMS made nor the number of years involved in the CLAIM, or CLAIMS made.  The defense limits utilized by a CLAIM or CLAIMS in one AGREEMENT PERIOD will not be replenished by subsequent renewal policies.

D.  Supplementary Payments - with respect to the insurance afforded by this AGREEMENT, the COMPANY shall:

   1.  pay all premiums on bonds to release attachments for an amount not in excess of the limits of liability of this AGREEMENT, and all premiums on appeal bonds required in any defended suit, but without any obligation to apply for or furnish any such bonds;

   2.  pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any suit, and all interest accruing after entry of judgment until the COMPANY has paid, tendered, or deposited in court such part of such judgment as does not exceed the limits of the COMPANY's liability thereon;

   3.  reimburse the INSURED for all reasonable expenses, other than loss of services, earnings, or other income, incurred at the COMPANY's request; and

   4.  pay prejudgment interest awarded against the INSURED in any CLAIM defended by the COMPANY on that portion of the judgment that does not exceed the limits of the COMPANY's liability. If the COMPANY offers to pay its limit of liability, it will not pay such interest based on the period of time after the offer.

E.  The COMPANY will select legal defense and will not provide for separate or additional legal defense beyond that selected by the COMPANY.

Form DEF001 (rev. 01/2001)                          DEF - 1

USA_000177

# Washington Casualty Company

F. No costs, charges or expenses shall be incurred, or settlements made, without the COMPANY's written consent.

G. The amounts incurred under this AGREEMENT are payable by the COMPANY in addition to the applicable limits of liability except the amounts incurred under this AGREEMENT are part of and not in addition to the limits of liability applicable to the following coverages:

    a) Directors and Officers Liability
    b) Employment Practices Liability, or
    c) Pollution.

H. This AGREEMENT does not apply to Billing Errors and Omissions Coverage.

USA_000178

# Washington Casualty Company

## AGREEMENT CONDITIONS

A.  Limits of Liability

   1.  Regardless of the number of INSUREDS under this AGREEMENT or the number of CLAIMS made, the COMPANY's liability is limited as follows:

      a.  Subject to the above provision with respect to "Annual Aggregate", the total liability of the COMPANY for all DAMAGES because of all INJURY arising from any one CLAIM shall not exceed the primary limit of liability stated in the DECLARATIONS as applicable to "Each Claim".

      b.  The total liability of the COMPANY for all DAMAGES because of all INJURY to which this AGREEMENT applies during any one AGREEMENT period shall not exceed the primary limit of liability stated in the DECLARATIONS as the "Annual Aggregate".

B.  Premium

   1.  All premiums for this AGREEMENT shall be computed in accordance with the COMPANY's rules, rates, rating plans, premiums and minimum premiums as applicable.

C.  Inspection and Audit

   1.  The COMPANY shall be permitted but not obligated to inspect an INSURED'S property and operations at any time. Neither the COMPANY's right to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of an INSURED, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule, or regulation.

   2.  The COMPANY may examine and audit an INSURED'S books and records at any time while this AGREEMENT is in effect and within three years after the final termination of this AGREEMENT, insofar as they relate to the subject matter of this AGREEMENT.

D.  Action against the COMPANY

   1.  No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this AGREEMENT, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant, and the COMPANY.

   2.  Whenever judgment is served against the INSURED or the personal representative of a deceased INSURED for liability covered by this AGREEMENT, then an action may be brought against the COMPANY on the AGREEMENT, subject to its terms and limitations, by the judgment creditor to recover on the judgment. Nothing contained in this AGREEMENT shall give any person or organization any right to recover from the COMPANY any sums other than those for which a final judgment has been obtained against the INSURED and for which the INSURED is covered by this AGREEMENT.

   3.  Bankruptcy or insolvency of an INSURED or of an INSURED'S estate shall not relieve the COMPANY of any of its obligations hereunder.

E.  Assistance and cooperation of the INSURED

   1.  The INSURED shall cooperate with the COMPANY, and, upon the COMPANY's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of SUITS. The INSURED shall not, except at its own cost, voluntarily make any payment, assume any obligation, or incur any expense. The INSURED shall take no action that compromises the defense or potential defense of any CLAIM.

USA_000179

# Washington Casualty Company

F.   Subrogation

   1.   When the INSURED has been paid DAMAGES or otherwise compensated by the COMPANY under this AGREEMENT and also recovers from another, the COMPANY shall be subrogated to the extent thereof and shall be reimbursed to the extent of its payment or compensation after that INSURED has been fully compensated for his or her loss.

   2.   Except as limited above, the COMPANY is entitled to all the rights of recovery of the INSURED to whom payment was made against another. The INSURED must sign and deliver to the COMPANY any legal papers relating to that recovery, do whatever else is necessary to help the COMPANY exercise those rights and do nothing after loss to prejudice its rights.

G.   Other Insurance

   1.   The insurance afforded by this AGREEMENT shall be excess insurance over any other insurance that covers matters covered by this AGREEMENT. However, the coverage provided those INSUREDS defined in subsections b, h, j, k, and l, of SECTION III (2) - DEFINITION OF INSURED, of the Healthcare Facility Coverage Agreement, shall be primary.

H.   Changes

   1.   The first NAMED INSURED shown in the DECLARATIONS is authorized to make changes in the terms of this AGREEMENT with the COMPANY's consent. This AGREEMENT's terms can be amended or waived only by endorsement issued by the COMPANY and made a part of this AGREEMENT.

I.   Assignment

   1.   Assignment of interest under this AGREEMENT shall not bind the COMPANY until its consent is endorsed hereon.

J.   Cancellation or Nonrenewal

   1.   This AGREEMENT may be cancelled by the NAMED INSURED by mailing or delivering written notice to the COMPANY, stating when thereafter such cancellation shall be effective.

   2.   This AGREEMENT may be cancelled by the COMPANY by mailing or delivering to the NAMED INSURED at the last mailing address known to the COMPANY, written notice of cancellation, including the actual reason for the cancellation, at least:

      a.   10 days before the effective date of cancellation if the cancellation is for non-payment of premium, or;

      b.   90 days before the effective date of cancellation if the cancellation is for any other reason.

   3.   In the event of cancellation, earned premium will be computed on a pro-rate basis.

   4.   This AGREEMENT may be non-renewed by the COMPANY by mailing or delivering to the NAMED INSURED, at the last mailing address know to the COMPANY, written notice of the COMPANY's intention not to renew, including the actual reason for the non-renewal, at least 90 days before the expiration date of the AGREEMENT.

K.   Definitions

   1.   Words and terms defined in this AGREEMENT are printed in entirely upper case (capitalized) letters.

USA_000180

# Washington Casualty Company

    L.   Conformance to Law

        1.   Any part of this AGREEMENT that conflicts with the statutes of the state where the AGREEMENT is issued is automatically changed to conform to such statutes.

In Witness whereof, the COMPANY has caused this AGREEMENT to be signed by its President and Secretary, but this AGREEMENT shall not be valid unless countersigned on the DECLARATIONS page by a duly authorized representative of the COMPANY.

 

 

Janvi W Allegretto
_____
Secretary

                                                                                  _____
                                                                                President

USA_000181

# Washington Casualty Company

## SEXUAL AND PHYSICAL ABUSE
## LIMITATION ENDORSEMENT

**Named Insured**

Sea-Mar Community Health Centers
1040 S. Henderson Street
Seattle, WA   98108

| | |
|---|---|
| Policy No: | 1-3979 |
| Endorsement No | 2 |
| EffectiveDate | 12/31/2011 |

In consideration of the premium charged, it is understood and agreed that the Health Care Facility Coverage Agreement, CA001, Section VIII, Exclusions, 3) is amended as follows:

3.   To any alleged or actual sexual or physical abuse, sexual molestation, or sexual exploitation.
      This exclusion does not apply to the Named Insured for acts of another Insured unless committed with the knowledge or at the direction of the NAMED INSURED, provided:

   a.  The total limit of the Company for all DAMAGES and defense costs because of INJURY arising from any one sexual or physical abuse claim shall not exceed $6,000,000.

   b.  The total limit of the Company for all DAMAGES and defense costs during any one AGREEMENT PERIOD because of INJURY arising from sexual or physical abuse claim(s) shall not exceed $10,000,000.

This endorsement is not valid unless countersigned by a duly authorized representative of the COMPANY.

_____

Kibble & Prentice
206-577-6802

12/29/2011
_____

Issue Date

Form END006 ( rev. 01/2001)

USA_000182

# Washington Casualty Company

## ENDORSEMENT
### (GENERAL)

Named Insured

Sea-Mar Community Health Centers
1040 S. Henderson Street
Seattle, WA   98108

| | |
|---|---|
| Policy No | 1-3979 |
| Endorsement No | 1 |
| Effective Date | 12/31/2011 |

In consideration of the premium charged, it is understood and agreed that:

The Named Insured is amended to include:

Sea-Mar Community Health Center
Sea-Mar Skilled Nursing Facility
Sea-Mar South Park Family, LLC - Retro Date: 1/9/2008
Sea-Mar Farmworker & Community Housing Development - Retro Date: 4/22/2002

12/29/2011
Issue Date

Kibble & Prentice
206-577-6802

USA_000183

Washington Casualty Company

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

| | |
|---|---|
| Named Insured | Policy No: 1-3979 |
| Sea-Mar Community Health Centers | Endorsement No 5 |
| 1040 S. Henderson Street | Effective Date 12/31/2011 |
| Seattle, WA  98108 | |

### THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

> HEALTH CARE FACILITY COVERAGE AGREEMENT - FORM CA001 (rev. 01/2001)
> DIRECTORS & OFFICERS LIABILITY COVERAGE AGREEMENT AND ERRORS AND
> OMISSIONS LIABILITY - FORM CA006 (rev. 01/2001)
> EMPLOYMENT PRACTICES LIABILITY COVERAGE AGREEMENT
> FORM CA007 (rev. 01/2001)
> EMPLOYMENT BENEFIT LIABILITY COVERAGE AGREEMENT, FORM CA004 (rev. 01/2001)

A.  The following exclusion is added:
This insurance does not apply to :

Terrorism:
Any INJURY or DAMAGE arising, directly or indirectly, out of a "Certified act of terrorism:
or an "Other act of terrorism." However, with respect to an "Other act of terrorism," this exclusion applies only when
one or more of the following are attributed to such act:

1.  The total of insured damage to all types of property exceeds $25,000,000.  In determining whether
the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities
affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property.
For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be
covered by any insurance but for the application of any terrorism exclusions; or

2.  Fifty or more persons sustained death or serious physical injury.  For the purpose of this provision,
serious physical injury means:

   a.     Physical injury that involves a substantial risk of death; or

   b.     Protracted and obvious physical disfigurement; or

   c.     Protracted loss of or impairment of the function of a bodily member or organ; or

3.  The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly
results in nuclear reaction or radiation or radioactive contamination; or

4.  The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous
biological or chemical materials; or

5.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose
of the terrorism was to release such materials.

Washington Casualty Company

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM

With respect to this exclusion, Paragraphs 1. and 2. describe the thresholds used to measure the magnitude of an incident of an "Other act of terrorism" and the circumstance in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

B.  The following definitions are added:

1.  For the purposes of this endorsement, INJURY or DAMAGE means any INJURY or DAMAGE covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, INJURY, NUCLEAR MATERIAL, or POLLUTANTS, as may be defined in any applicable Coverage Part, except that the definition of INJURY does not include MEDICAL PROFESSIONAL INJURY, as allowed by law.

2.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of the State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

    a.  The act resulted in aggregate losses in excess of $5million; and

    b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3.  "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government of coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.  Multiple incidents of an "Other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C.  In the event of any incident of a "Certified act of terrorism" or an "Other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

12/29/2011

Issue Date

Kibble & Prentice
206-577-6802

# Washington Casualty Company

## EXCESS LIMITS OF LIABILITY

Named Insured

Sea-Mar Community Health Centers
1040 S. Henderson Street
Seattle, WA   98108

| | |
|---|---|
| Policy No: | 1-3979 |
| Endorsement No | 4 |
| Effective Date | 12/31/2011 |

In consideration of the premium charged, it is understood and agreed that Excess Limits of Liability (now to be referred to as Excess Coverage) as shown in item IV of the declarations page applies as follows:

1.  Excess Coverage applies above "Each Claim" limit as shown on the Declarations page subject to the following;

    a.  Regardless of the number of INSUREDS under this policy, the number of coverages to which the Excess Coverage applies, or the number of CLAIMS made, the Company's liability for Excess Coverage is shared for all such coverages.

2.  The total liability of the Company for all DAMAGES because of all INJURY to which Excess Coverage applies shall not exceed the applicable excess aggregate limit of liability including loss adjustment expenses or any optional reporting period extension. The aggregate limit does not apply separately to any extended reporting period and is also limited to 1a above.

3.  Excess Limits as described above applies to the Coverages for the limits chosen and displayed in the table(s) below:

Excess

| Per Occurrance      /     Aggregate | Applicable Coverages From the Declarations Page |
|---|---|
| $ 5,000,000 Per Claim / $ 5,000,000 Annual Aggregate | A, B, C |
| $ Per Claim / $ Annual Aggregate | |

Kibble & Prentice
206-577-6802

12/29/2011
Issue Date

USA_000186