HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALISHA BRIGGS,

    Plaintiff,

  v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

CASE NO. 14-CV-5608-RBL

ORDER GRANTING MOTION TO DISMISS AND DENYING CROSS MOTION FOR SUMMARY JUDGMENT

[DKT. #24 & #28]

## I. BACKGROUND

THIS MATTER is before the Court on Defendant United States' Motion to Dismiss and Plaintiff Alisha Briggs' Cross Motion for Summary Judgment. [Dkt. #24, Dkt. #28] Briggs claims that the United States employed and is liable for the malpractice of Dr. Penny Faires, a physician who misdiagnosed her, causing severe and permanent injuries. The United States argues because Faires was a temporary worker, and not an employee, it is immune from liability for Faires' conduct under the Federal Tort Claims Act.

Sea-Mar Community Health Center receives federal funding. In 2008, Sea-Mar hired CompHealth Medical Staffing, a temporary work agency in the health care field, to provide temporary professional healthcare services. Under the contract, Sea-Mar controlled the

temporary workers' schedules, provided support staff and equipment, and set policies and procedures for all of the people working in the clinic. CompHealth retained the right to pay, insure, train, evaluate, and terminate its temporary workers.

In 2012, CompHealth hired Faires to provide independent contractor "*locum tenens*"[1] physician services for a vacancy at Sea-Mar. The parties agreed that Faires was a CompHealth employee, and that she was not the employee of any CompHealth client. Their contract also stipulated that Faires would exercise independent medical judgment and control over her decisions.

Faires treated Briggs at Sea-Mar for severe back pain on three occasions beginning a month after starting her temporary employment. Faires diagnosed Briggs with sciatica. Briggs' pain worsened and she suffered other symptoms. A month after her final appointment with Faires, a different doctor diagnosed Briggs with cauda equine syndrome ("CES")—compression of the nerve roots at the end of the spinal cord— and she was transported for emergency surgery at Grays Harbor Community Hospital. Briggs must now rely on braces for mobility and lacks urinary control.

Briggs sued Faires and Sea-Mar for malpractice in Grays Harbor County Superior Court. The United States informed her that Sea-Mar was a federally-funded health clinic, and that the United States was actually the proper defendant. Briggs dismissed her state law claim and re-filed here, asserting an FTCA claim.

The United States seeks dismissal, arguing that Faires was an independent contractor, not an employee, under the FTCA. It claims that it has not waived sovereign immunity for the

---

[1] The term *locum tenens* is used to reference temporary workers but is literally translated as "holding the place".

conduct of temporary workers like Faires, and that this court does not have subject matter over Briggs' FTCA claim.

Briggs argues Faires was effectively a Sea-Mar employee, because it excercised the same amount of control over Faires that it did over any other physisican employee. She claims that the United States is liable under the FTCA for Faires' malpractice. She seeks summary judgment on this issue, or, in the alternative, a determination that if she is not an employee, Sea-Mar's private medical malpractice insurance applies to this case.[2] If the court disagrees, Briggs asks it to toll the limitations period on her medical malpractice claim against Faires for the pendency of this case, under 28 U.S.C. § 1367(d).

The issues are: (1) whether Faires is a federal employee or an independent contractor under the Federal Tort Claim Act; (2) if Faires is not an employee, is she nevertheless a "covered contractor" under the Federally Supported Health Centers Assistance Act ("FSHCAA"); and (3) if not, whether Faires was, in any event, Sea-Mar's "apparent agent," making the United States vicariously liable for her negligence under agency principles.

## II.   STANDARD OF REVIEW

"With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction." *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005). When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). "[I]f the

---

[2] The applicability of Sea-Mar's private insurance is moot. If Faires is not a Sea-Mar employee, this Court lacks jurisdiction to decide this matter. If she is an employee, Sea-Mar and its employees are covered under the FTCA.

jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment." *Rosales v. United States,* 824 F.2d 799, 803 (9th Cir. 1987).

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### III.   DISCUSSION

The Federal Tort Claims Act is a limited waiver of sovereign immunity, rendering the United States liable to the same extent as a private party "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee* of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b) (emphasis added). "The question of whether a plaintiff's claims fall within the scope of the

waiver is one of subject matter jurisdiction." *Hagy v. United States,* 976 F. Supp. 1373, 1376 (W.D. Wash. 1997).

**A.    FTCA Independent-Contractor Exception**

Briggs argues that the United States controlled Faires' physical conduct to the same extent that it controlled its own physician employees. Briggs contends that the independent contractor exception does not apply because the United States effectively exercised day-to-day control over Faires' performance of her duties.[3] The United States argues that the language in CompHealth and Sea-Mar's contract clearly established Faires as an independent contractor. The United States also contends that Faires alone had control over her medical decisions and was solely responsible for the health and welfare of her patients.

"The critical element in distinguishing an [employee] from a contractor is the Government's power 'to control the detailed physical performance of the contractor.'" *United States v. Orleans,* 425 U.S. 807, 814 (1976) (quoting *Logue v. United States,* 412 U.S. 521, 528 (1973)).

The FTCA definition of "government employee" includes officers and employees of federal agencies, but explicitly excludes any *contractor* with the United States. 28 U.S.C. § 2671. "A contractor's status is not changed from independent contractor to agent or employee unless the federal government exercises 'substantial supervision over the day-to-day operations of the contractor.'" *Autrey v. United States,* 424 F.3d 944, 956 (9th Cir. 2005) (quoting *Orleans,* 425

---

[3] Briggs points to a district court case in Louisiana to bolster her argument. This case is distinguishable for two important reasons. First, the physician there "was contractually required to explain procedures, risks and benefits to each patient. . .thereby impinging to some slight extent on the physician's independent professional discretion." *Mantiply v. United States,* No. CIV.A. 10-1855, 2012 WL 4738875, at *4 (W.D. La. Aug. 21, 2012) (quotations omitted). Here, no facts are presented which would allow any inference that Faires' professional discretion was impinged upon to any degree. Second, the government in *Mantiply* had "control over every minute aspect of the hiring," but here CompHealth's contract with Sea-Mar expressly provided that Comp Health would control every aspect of Faires' hiring.

U.S. at 816). The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33 (1992).

Application of a strict "control" test for a physician is difficult because "a physician must have discretion to care for a patient and may not surrender control over certain medical details." *Lilly v. United States,* 876 F.2d 857, 859 (10th Cir. 1989). In the interpretation of a contract, "clear language regarding government control or 'federal employee' status can often prevail over facts that might otherwise support a finding of 'day-to-day control.'" *Woodruff v. Covington,* 389 F.3d 1117, 1127 (10th Cir. 2004); *see Robb v. United States,* 80 F.3d 884, 890 (4th Cir. 1996) (applying control test properly includes analysis of contractual relationship); *Lurch v. United States,* 719 F.2d 333, 338 (10th Cir. 1983) (holding that the contract and working arrangement under it controls nature of relationship).

Faires provided independent contractor physician services for CompHealth which, in turn, provided Sea-Mar with temporary medical staffing. Faires' contract with CompHealth explicitly stipulated that she was not an employee of Sea-Mar under any circumstance. Faires was also required by her contract to exercise independent medical judgment at all times.

Pursuant to the contract between CompHealth and Sea-Mar, Faires was an employee of CompHealth. CompHealth was responsible for paying Faires' wages, taxes, and insurance[4]. CompHealth required Faires to maintain her medical license in good standing and ensured that she was competent. CompHealth—not Sea-Mar—evaluated Faires's performance. CompHealth reserved the rtight to approve any changes to the location of a worksite or the nature of the work.

---

[4] It is also notable that CompHealth secured malpractice insurance for its *locum tenens* physicians—apparently recognizing that because they were CompHealth's employees, its physicians would not be covered under the FTCA.

Sea-Mar could not remove Faires for professional incompetence, absences or tardiness without communicating with CompHealth in advance. CompHealth reserved the "right to first counsel [Faires] and provide an opportunity for [Faires] to correct any deficiencies prior to any such removal." In short, to the extent Faires was subject to any control, it was excercised by CompHealth.

The plain language of the contract clearly established that CompHealth—not Sea-Mar—was responsible for evaluating, directing, paying, insuring, testing and terminating Faires during the relevant period. Faires was neither selected nor paid directly by Sea-Mar. These factors, combined with Faires independent medical judgment are sufficient to establish her independent contractor status as a matter of law. The United States is not subject to an FTCA claim based on Faires' status as a government employee as a matter of law.

**B.     FSHCAA Covered Contractor**

Briggs claims that even if Faires was not an employee, she was at least a "covered contractor" under the FSHCAA, making her FTCA claim viable. The FSHCAA expanded the federal government's waiver of sovereign immunity under the FTCA to include certain contract physicians for medical malpractice. 42 U.S.C. § 233(g)(1)(A). The issue is whether Faires qualifies as a covered contractor.

The FSHCAA's expansion of government liability must be strictly construed, if it would enlarge the United States' waiver of sovereign immunity. *Del Valle v. Sanchez,* 170 F. Supp. 2d 1254, 1269 (S.D. Fla. 2001). Federal courts have strictly interpreted the language of the FSHCAA to only cover physicians that have contracted *directly* with the qualified health centers, with limited exception. *See Dedrick v. Youngblood,* 200 F.3d 744 (11th Cir. 2000) (physician did not qualify for FSHCAA coverage because he did not first contract with covered entity); *Del*

*Valle v. Sanchez,* 170 F. Supp. 2d 1254 (S.D. Fla. 2001) (physicians were acting as employees of a professional association and did not qualify for FSHCAA coverage); *Cruz v. United States,* 70 F. Supp. 2d 1290, 1295 (S.D. Fla. 1998) (holding that a qualified individual must have first contracted with a covered entity for FSHCAA coverage).

Faires contracted with CompHealth, and not directly with Sea-Mar. Faires is not a covered contractor under the FSHCAA.

**C.     Apparent Agency**

Finally, Briggs argues that Sea-Mar held Faires out to the public as its agent and, therefore, it is vicariously liable under the doctrine of apparent (or ostensible) agency. The United States claims this argument is counter to the intent of Congress and the FTCA to limit waivers of sovereign immunity.

It is well-settled that courts applying federal law must reject "the doctrine of apparent agency [a]s not a proper basis for a waiver of sovereign immunity under the FTCA." *Del Valle,* 170 F. Supp. 2d at 1267 n. 16; *see Nolden v. United States,* 2013 WL 3102344 (M.D. Pa. June 18, 2013) (rejecting doctrine of ostensible agency argument in FTCA case); *Andersen v. United States,* 2009 WL 6633307 (S.D. Fla. October 21, 2009) (rejecting the doctrine of apparent agency to impose liability to the United States under the FTCA); *Clemente v. Roth,* 2002 WL 33768985 (D. Md. August 2, 2002) (precluding use of ostensible agency theory to define federal employment under the FTCA); *Spitzer v. United States,* 1988 WL 363944 (S.D. Ga. February 16, 1988) (applying federal law does not allow advancement of the doctrine of apparent agency to FTCA case); *Walker v. United States,* 549 F. Supp. 973, 978 (W.D. Okla. 1982) (rejecting the doctrine of apparent agency in FTCA case when advanced as an exception to the independent contractor defense).

The doctrine of apparent agency is not applicable in an FTCA claim against the United States.

## CONCLUSION

For the reasons stated above, the Defendant United States' Motion to Dismiss pursuant to FRCP 12(b)(1) (Dkt. #24) is **GRANTED** and Plaintiff Briggs' Motion for Summary Judgment is **DENIED** as moot. It is **ORDERED** that the statute of limitations is **TOLLED** pursuant to 28 U.S.C. § 1367(d) during pendency of this case and for 30 days after this Order.

Dated this 21st day of July, 2015.

*[signature]*

Ronald B. Leighton
United States District Judge